**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| FLAMINIO J. GALLEGOS,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. ED CV 06-778-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 20, 2006, seeking review of the Commissioner's denial of his applications for Supplemental Security Income payments and Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 1, 2006, and August 2, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 4, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on May 4, 1965. [Administrative Record ("AR") at 589.] He has a twelfth grade education and past work experience as, among other things, a mechanic's helper, sandwich maker, and asbestos remover. [AR at 146, 147, 152, 155-60.]

On November 7, 2001, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he had been unable to work since October 1, 2001, due to Graves disease, which slows his metabolism, causes headaches, and swells his eyes (causing blurriness). [AR at 127-29, 589-91.] After a denial of his applications, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on June 18, 2003, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational expert and a medical expert also testified. [AR at 597-638.] The ALJ's decision denying disability of September 11, 2003, was vacated by the Appeals Council, and the matter was remanded for further proceedings. [AR at 22, 99-101.] A supplemental hearing was then held on March 3, 2005, at which a medical expert and a vocational expert testified. [AR at 639-70.] On March 24, 2005, the ALJ determined that plaintiff was not disabled. [AR at 22-27.] When the Appeals Council denied review on February 15, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 9-12.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 26.] At step two, the ALJ concluded that plaintiff had the "severe" impairments of diabetes mellitus II with peripheral neuropathy, a history of carpal tunnel syndrome, lumbar disc disease with mild radiculopathy, hypertension with a transient ischemic episode, hypothyroidism and obesity. [AR at 23, 26.] At step three, the ALJ determined that plaintiff's impairments did not meet or equal any impairment in the Listing. [AR at 26.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[3] to perform a narrow range of light work.[4] [AR at 26.] At step four, it appears that

---

[2] The ALJ also found that plaintiff's insured status for Disability Insurance Benefits will continue through the date of the decision. [AR at 23, 26.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b). In particular, the ALJ adopted the medical expert's opinion that plaintiff "could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, walk and/or stand at least 2 hours out of a given 8 hour period but could not walk on uneven terrain and could sit up to 6 hours out of a given 8 hour period provided the opportunity to stand and stretch for at least one minute on an hourly basis. . . . [Plaintiff] could not perform

the ALJ concluded -- based on vocational expert testimony -- that plaintiff was not capable of performing his past relevant work. [AR at 25-26.] At step five, the ALJ found, based on the vocational expert testimony and application of Medical-Vocational Rule 202.21 as a framework, that a decision of "not disabled" is supported. [AR at 26-27.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 22-27.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the opinions of the treating physician; and (2) failed to properly consider plaintiff's subjective complaints and plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 3. The Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A. TREATING PHYSICIAN'S OPINIONS**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d

---

work requiring sensitive touch due to reduced sensation and [could not] work at a job requiring the use of ladders, ropes or scaffolding and not requiring greater than occasional kneeling, crouching or crawling and could not work with vibrating tools, exposure to work hazards and no greater than occasional exposure to a noisy environment." [AR at 23-24.]

at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id. at 830-31.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

Here, plaintiff contends that the ALJ failed to provide either clear and convincing or specific and legitimate reasons for rejecting the opinions of plaintiff's treating neurologist, Dr. Purnima Thakran, and that the ALJ's reliance on the non-examining non-treating medical expert was improper. Joint Stipulation at 5-6. As discussed below, the Court disagrees with plaintiff. The ALJ concluded that Dr. Thakran's opinion was "inconsistent with the totality of the medical evidence of record," and that his assessment was "an egregious accommodation to [plaintiff], favors the reader with little more than a diagnosis, appears purely through a series of checked boxes and

without any clinical or objective support." [AR at 24.] Instead, the ALJ relied on the opinions of Dr. Lowell Sparks, the medical expert, and Dr. Gabriel Fabella, the consultative internal medicine examiner. The ALJ gave "[c]ontrolling probative value to Dr. Fabella's examination . . . [as it] is consistent with the medical expert's testimony . . . and the rest of the record." [AR at 24.]

On March 7, 2002, Dr. Thakran examined plaintiff for the first time. He evaluated plaintiff with diabetic neuropathy, but found that plaintiff was "in no acute distress," and his muscle strength was 5/5 in all muscle groups of all four extremities. His heel to toe and tandem walking was normal. [AR at 327-29.] Among other things, Dr. Thakran encouraged plaintiff to enroll in a regular exercise program, and to receive "diabetic teaching." Id. Just two months later, Dr. Thakran opined that plaintiff was unable to work at all. [AR at 311.] In June 2003, Dr. Thakran limited plaintiff to "light duty as per [plaintiff's] tolerance." [AR at 523.] In July, 2003, Dr. Thakran limited plaintiff to working two hours per day. [AR at 538.] He also limited plaintiff to standing and walking, and sitting, for 0 to 2 hours each during an eight hour workday, and restricted his use of hands, fingers and feet for repetitive motions. [AR at 539-40.]

Dr. Thakran completed a lower extremities impairment questionnaire on June 24, 2004, in which he indicated he had been treating plaintiff since March 7, 2002, with a frequency of every 1 to 3 months. He diagnosed plaintiff with lumbar radiculopathy, peripheral neuropathy secondary to diabetes, and hyperthyroidism, with a "guarded" prognosis. [AR at 548.] Dr. Thakran indicated in the form that plaintiff has sensory loss distally at all four limbs, with severe burning pain in both feet, and that plaintiff experiences pain, loss of sensation and fatigue. [AR at 549.] He concluded that plaintiff can sit for two hours, and stand or walk for 0 to 1 hours in an eight hour day, should not sit continuously in a work setting, must get up and move around every 30 minutes, should not stand or walk continuously in a work setting, should never lift or carry anything over 10 pounds, needs to elevate his legs for 20 hours in a 24-hour period at 30 minute increments, and is incapable of even low stress. He estimated that plaintiff would likely be absent from work more than three times a month. [AR at 548-54.] In another form, which is undated, Dr. Thakran indicates that plaintiff can stand or walk 0 to 2 hours in an eight hour day, sit for 0 to 2 hours in an eight hour

day, and is restricted in using his hands, fingers and feet for repetitive movements. [AR at 567-68.]

Dr. Gabriel Fabella conducted an examination of plaintiff on October 13, 2004, following which he concluded that plaintiff has peripheral neuropathy involving both feet, which causes pain and tingling on ambulation. He concluded that plaintiff could stand and/or walk for about 6 hours total in an 8 hour work day with normal breaks, has no limitations in sitting, could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could frequently stoop or bend. [AR at 555-64.] Dr. Fabella also noted that plaintiff's diabetes mellitus was "apparently controlled for the past six months." [AR at 559.] At the hearing, Dr. Lowell Sparks relied on Dr. Fabella's report and the records to reach his conclusion about plaintiff's functional limitations. [AR at 652.] He found Dr. Thakran's limitations to be "a little generous" to plaintiff [AR at 652] and, according to the ALJ, Dr. Sparks found Dr. Fabella's opinion to be "purely objective and consistent with his clinical findings." [AR at 24.] Dr. Sparks placed further restrictions on plaintiff's ability to stand, walk, and sit, limiting him to walking or standing for two hours out of an eight hour day, and sitting for six hours with the opportunity for hourly position changes, i.e., the opportunity to stand and stretch for a minute. [AR at 649.] He further opined that plaintiff can lift 20 pounds occasionally and 10 pounds frequently. [AR at 649.] He would be limited to jobs not requiring sensitive touch [AR at 650], and may need a cane to stabilize himself when he walks. [AR at 651.] Dr. Sparks found nothing in the medical records that would support plaintiff's need to elevate his legs, other than for symptom relief. [AR at 652-53.]

While plaintiff argues that the ALJ did not provide any clear and convincing, or specific and legitimate, reasons to reject the opinions of Dr. Thakran, plaintiff provided no support for this position. Instead, he simply repeats Dr. Thakran's opinions from the various forms he completed. Joint Stip. at 4-6. The Court finds that the ALJ provided sufficient reasons to reject the treating physician's opinions. First, Dr. Thakran's opinion that plaintiff could only work 2 hours a day is without any clinical or objective support, and is provided through a series of checked boxes. The ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a

treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). Plaintiff points to no support in the record for this restrictive limitation, and the Court has found none.

Next, the ALJ commented that while Dr. Thakran indicates that plaintiff has sensory loss distally in all limbs, there is no supporting evidence in the record of lower extremity instability or falling.[5] [AR at 25.] This specific reason is unrebutted by plaintiff, and is supported by the record. The ALJ also noted that Dr. Thakran opined that plaintiff's legs need to be elevated 20 out of 24 hours per day. Plaintiff himself testified, however, that he only elevates his feet at least 3 times a day, for approximately 1/2 hour every time [AR at 25, 659], which does not even approach 20 hours a day. The ALJ accurately concluded that Dr. Thakran's restrictions are most accommodating to plaintiff. The ALJ further concluded that Dr. Thakran's opinion that plaintiff would be absent from work more than three times per month is "entirely unsupported." [AR at 25.] Plaintiff does not rebut this conclusion. See Joint Stipulation. Here, as the medical expert provided a specific rationale and narrative justifying his opinion, and as it is not contradicted by all other evidence -- indeed, the testimony is supported in part by the opinion of Dr. Fabella, who conducted an examination of plaintiff -- the testimony is substantial evidence that the ALJ may consider. Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 600 (9th Cir. 1999). As noted by defendant, "where the evidence is susceptible to more than one rational interpretation," the Commissioner's decision must be upheld. Joint Stip. at 9, citing Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The ALJ's decision to give weight to the testimony

[5] While plaintiff testified that he was using a cane at the hearing because he felt like his legs were going to collapse [AR at 659], the ALJ properly rejected plaintiff's testimony. See infra.

of Dr. Sparks and the report of Dr. Fabella is a rational interpretation of the evidence, and must be upheld.

**B. PLAINTIFF'S CREDIBILITY**

Plaintiff next argues that the ALJ did not properly reject his testimony regarding the severity of his pain and/or other symptoms, failed to specify which of plaintiff's allegations were not credible, did not consider the appropriate factors in rejecting plaintiff's testimony, and did not provide clear and convincing reasons for doing so. Joint Stip. at 10-11. Plaintiff also challenges the ALJ's consideration of plaintiff's mother's Daily Activity Questionnaire [AR at 199-204], and claims that the ALJ mischaracterized and misstated her statements. Joint Stip. at 11.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified that he has had sole custody of his son since his son was born. [AR at 620.] He has no difficulty dressing or bathing himself, and can lift 5 to 10 pounds without harming himself. [AR at 660.] Plaintiff cooks the meals, makes the beds, and washes the clothes for himself and his son. [AR at 662-63.] He can lift a gallon of milk in each hand. He spends his days carving things out of wood, and makes little toy chairs out of wood as a hobby. [AR at 663-64.] Plaintiff did not work from 1992 to 1997 because he could not find a job. [AR at 664-65.]

Plaintiff further testified that he has to elevate his feet 2 to 3 hours a day in order to relieve the pain in his legs. [AR at 603-04, 659.] He spends 5 to 6 hours lying down during an 8 hour period of time. [AR at 621.] He can sit for up to 45 minutes at a time, and can stand for 2 hours at one time. [AR at 621-22.] Plaintiff can walk for about a block, then stop, and walk another block. The pain in the lower half of his legs prevents him from walking. [AR at 645.] Plaintiff has used a cane for 4 years now. [AR at 660.] Plaintiff tries to attend church twice a week. [AR at 609.]

In this case, the ALJ employed ordinary techniques of credibility determination, supported by substantial evidence in the record, to conclude that plaintiff's subjective complaints were not entirely credible. See Fair, 885 F.2d at 604 n.5. The ALJ cited clear and convincing reasons for concluding that plaintiff's hearing testimony "fails to credibly establish functional limitations greater than" those found by the ALJ. [AR at 25.] The ALJ in fact adopted plaintiff's testimony that he could perform household chores, can cook and goes grocery shopping. [AR at 25.] The Ninth Circuit in Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990, as amended, Feb. 4, 1991), concluded that an ability to perform activities such as taking care of personal needs, preparing easy meals, and doing light housework and some shopping, "may be seen as inconsistent with the presence of a condition which would preclude all work activity." The ALJ further noted the inconsistency between plaintiff's assertion that he can lift a gallon of milk in each hand, but cannot lift greater than 10 pounds. He also noted that plaintiff enjoys carving wood as a hobby and can carve toy chairs, "indicative of an ability to use his hands."[6] [AR at 25.] These inconsistencies and

---

[6] Dr. Sparks testified that plaintiff's ability to use a cane is consistent with gripping, grasping, and twisting things. [AR at 657.]

discrepancies in plaintiff's statements are valid reasons to reject a plaintiff's testimony. Fair, 885 F.2d at 603-04. The ALJ finally noted that plaintiff said he did not work between 1992 and 1997. [AR at 25.] While "consideration of work history must be undertaken with great care," this poor work history can be probative of credibility. See Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998). Resolving conflicts in the testimony and determining questions of credibility are functions solely of the commissioner. See Morgan, 169 F.3d at 599. The ALJ's findings for rejecting plaintiff's allegations, supported by the record, must be upheld.

The Court observes that as part of the order by the Appeals Council remanding this action, the ALJ was to address the statement of plaintiff's mother. In his decision, the ALJ discussed plaintiff's mother's signed questionnaire of July 25, 2002, and concluded that it supports plaintiff's ability to perform a narrow range of light work. The ALJ referred to the mother's assertion that plaintiff's activities of daily living include caring for his son, performing light household work, preparing meals and grocery shopping. She notes that plaintiff is also able to clean, wash and perform general housework, and attends church activities and family gatherings. [AR at 25, see AR at 199-204.] While the questionnaire includes activities plaintiff cannot perform, the ALJ found that the activities he can carry out are inconsistent with the preclusion of all work activities. Accordingly, the ALJ reasonably considered the questionnaire and found that it supported plaintiff's ability to perform a narrow range of light work. Remand is not warranted.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 20, 2007

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE